UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-mj-8411-RMM

UNITED STATES OF AMERICA

vs.

RYAN WESLEY ROUTH,

      **Defendant.**
_____/

WRITTEN FACTUAL PROFFER
IN SUPPORT OF PRETRIAL DETENTION

      To assist counsel and the Court during today's scheduled Pretrial Detention Hearing, the United States respectfully submits the following written factual proffer. The below paragraphs describe information the FBI has obtained through other members of law enforcement, witness interviews, the execution of search warrants and other legal process, forensic examinations and testing, and other standard means of investigation as part of an active and ongoing federal investigation. Because the facts are offered for the limited purpose of supporting the United States's request for pretrial detention, the facts in this written proffer do not set forth all of the information and evidence known to the United States in this ongoing investigation.

## FACTS

      1.    On September 15, 2024, former President of the United States Donald J. Trump was golfing at Trump International Golf Club in West Palm Beach ("Trump International"), located at 3505 Summit Boulevard, West Palm Beach, Florida, within Palm Beach County and the Southern District of Florida. As the former President advanced through the course, a Secret Service agent ("Agent"), who was part of the overall protective detail, moved ahead of him in a golf cart

and conducted a security sweep to identify any potential threats and to ensure the safety and security of the former President along the route.

2. The perimeter of Trump International is surrounded by a chain link fence, and the southeast corner of the course is screened by trees and brush. The 6th hole on the course is near the southeast corner, as shown on the map below:



3. While the former President was on the 5th hole, the Agent cleared the area along the 6th hole. Specifically, the Agent rode in a golf cart along the chain link fence that separated the 6th hole from Congress Avenue and Summit Boulevard.

4. At approximately 1:30 p.m., the Agent spotted the partially obscured face of a man in the brush along the fence line. The man was later identified as Ryan Wesley Routh ("ROUTH"). ROUTH's position was directly in line with the 6th hole. The Agent then observed a long black object protruding through the fence and realized the object was the barrel of a rifle aimed directly

at him.    The Agent jumped out of the golf cart, drew his weapon, and began backing away.  The Agent saw the rifle barrel move, and the Agent fired at ROUTH.

5. The Agent took cover behind a tree and reloaded his weapon, then looked up and saw that ROUTH was gone. The Agent called out over his radio that shots had been fired by the Agent and that there was a subject with a rifle.

6. The position ROUTH occupied when the Agent first noticed him was directly in line with the 6th hole green.

7. Former President Trump was playing the 5th hole when the Agent fired at ROUTH. Secret Service agents immediately removed the former President from the area upon hearing shots fired at the 6th hole.

8. Federal Bureau of Investigation ("FBI") agents searched the area where ROUTH had been hiding in the tree line. FBI agents located an SKS semiautomatic 7.62x39 caliber rifle with a scope attached and an extended magazine. The rifle was loaded with a total of 11 rounds and had a round in the chamber. The serial number on the rifle was obliterated and unreadable. The agents also found a digital camera, a backpack and a reusable shopping bag hanging from the chain link fence, as shown in the photo below:

[This Space Intentionally Left Blank]



9. The backpack and shopping bag both contained plates. Subsequent preliminary ballistics testing showed the plates were capable of stopping small arms fire.

10. The photograph below shows the obliterated serial number:



11. Shortly after the Secret Service Agent fired at ROUTH, a civilian driving in the area observed ROUTH running across Summit Boulevard toward a black Nissan Xterra, bearing a Florida license plate, parked nearby. The witness and ROUTH made eye contact. The witness observed ROUTH get into the vehicle and flee at a high rate of speed. The witness took photographs of the Nissan Xterra and wrote down all but the last digit of the license plate number. The witness immediately reported these observations to law enforcement.

12. Officers from the Palm Beach County Sheriff's Office ("PBSO") and Martin County Sheriff's Office ("MCSO") located the Nissan Xterra as it traveled northbound on I-95. At approximately 2:15 PM, MCSO initiated a motor vehicle stop. ROUTH was the driver and sole occupant of the vehicle.

13. During the stop, law enforcement transported the witness to the scene and the witness positively identified ROUTH as the same individual the witness had previously seen entering the Nissan Xterra after fleeing from Trump International.

14. Law enforcement discovered that the license plate on the Nissan Xterra was not registered to the Nissan Xterra. During a search of the Nissan Xterra, FBI agents found two additional license plates. The agents also found six cellphones. One of the cell phones contained a Google search of how to travel from Palm Beach County to Mexico. The agents also found 12 pairs of gloves; a Hawaii Driver's License in the Defendant's name; a passport in the Defendant's name; and documents, including the following:

   a. A handwritten list of dates in August, September, and October 2024 and venues where the former President had appeared or was expected to be present.

    b. A notebook with dozens of pages filled with names and phone numbers pertaining to Ukraine, discussions about how to join combat on behalf of Ukraine, and notes criticizing the governments of China and Russia.

15. The FBI obtained cell site records for two of the cell phones found in the Nissan Xterra. The two cell phones are serviced by different carriers that utilize different cell towers. The FBI's analysis shows the following:

    a. ROUTH traveled from the Greensboro, North Carolina, area, to West Palm Beach, Florida, on August 14, 2024.

    b. On multiple days and times from August 18, 2024, to September 15, 2024, ROUTH's cell phone accessed cell towers located near Trump International and the former President's residence at Mar-a-Lago.

16. The FBI examined the SKS rifle that was recovered from Trump International and found a latent fingerprint on a piece of tape attached to the rifle. The latent print preliminarily matches ROUTH. The photograph below shows the rifle:



17. As part of this investigation, FBI agents recently reviewed a book apparently authored by ROUTH in February 2023 titled, "Ukraine's Unwinnable War: The Fatal Flaw of Democracy, World Abandonment and the Global Citizen-Taiwan, Afghanistan, North Korea, WWIII and the End of Humanity." In the book, ROUTH stated that he "must take part of the blame for the [person] that we elected for our next president that ended up being brainless, but I am man enough to say that I misjudged and made a terrible mistake and Iran I apologize. You are free to assassinate Trump as well as me for that error in judgment and the dismantling of the deal. No one here in the US seems to have the balls to put natural selection to work or even unnatural selection."

18. On September 18, 2024, law enforcement was contacted by a civilian witness who stated that ROUTH had dropped off a box at his residence several months prior. After learning of the September 15, 2024, incident at Trump International, the witness opened the box. The witness stated the box contained ammunition, a metal pipe, miscellaneous building materials, tools, four phones, and various letters. One handwritten letter, addressed to "The World," stated, among other things, "This was an assassination attempt on Donald Trump but I failed you. I tried my best and gave it all the gumption I could muster. It is up to you now to finish the job; and I will offer $150,000 to whomever can complete the job." The witness took a photograph of the first page of the handwritten letter, as shown below:

[This Space Intentionally Left Blank]



Dear World,

This was an assassination attempt on Donald Trump but I am so sorry I failed you. I tried my best and gave it all the gumption I could muster. It is up to you now to finish the job; and I will offer $150,000 to whomever can complete the job. Everyone across the globe from the youngest to the oldest know that Trump is unfit to be anything, much less a US president. U.S. presidents must at bare minimum embody the moral fabric that is America and be kind, caring and selfless and always stand for humanity. Trump fails to understand any of

19. The handwritten letter above goes on to state in part: "He [the former President] ended relations with Iran like a child and now the Middle East has unraveled."

20. On or about December 20, 2002, ROUTH was convicted in Greensboro, North Carolina, of possession of a weapon of mass destruction (a "binary explosive device"), in violation of Section 14-288.8 of the North Carolina General Statutes, a class "F" felony. Class F felonies in North Carolina are punishable by terms of up to 59 months' incarceration.

20. On or about March 3, 2010, ROUTH was convicted of multiple counts of possession of stolen goods, in violation of Section 14-71.1 of the North Carolina General Statutes, a class "H" felony. Class H felonies in North Carolina are punishable by terms of imprisonment of up to 39 months' incarceration.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By: /s/ Mark D. Dispoto
  Mark D. Dispoto
  Assistant United States Attorney
  Southern District of Florida
  500 S. Australian Avenue, Suite 400
  West Palm Beach, FL 33401
  Fla Bar No.:
  Office: (561) 820-8711
  Email: mark.dispoto@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the below Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                          s/   Mark D. Dispoto
                                          Mark D. Dispoto
                                          Assistant United States Attorney

## SERVICE LIST

**Kristy Militello**
Office of the Federal Public Defender
Assistant Federal Public Defender
250 S. Australian Avenue
Suite 400
West Palm Beach, FL 33401
(561) 833-6288
Fax: 561-833-0368
Email: Kristy_Militello@fd.org


**Renee Michelle Sihvola**
Office of the Federal Public Defender
Assistant Federal Public Defender
109 North 2nd Street
Fort Pierce, FL 34950
(772) 489-2123
Email: renee_sihvola@fd.org